## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER SCOTT PFOFF,<br><br>Defendant. | Case No. 18-CR-74 (SRN/KMM)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Katharine Buzicky and Sarah Huddleston, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for Plaintiff.

Christopher Scott Pfoff, No. 21456-041, USP-Marion, P.O. Box 1000, Marion, IL 62959, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Defendant Christopher Scott Pfoff's Motion to Vacate under 28 U.S.C. § 2255 [Doc. No. 51], and his Request for a Certificate of Appealability [Doc. No. 71].[1]

Initially, on February 26, 2020, the Court denied Pfoff's § 2255 Motion, (Feb. 26, 2020 Order [Doc. No. 67]), and judgment was entered against him [Doc. No. 68].)

---

[1] Although Pfoff is the petitioner in this motion, because the current filings are found in the underlying criminal docket, the Court refers to him as "Defendant" or "Pfoff" throughout this ruling.

However, at that time, Pfoff had not yet filed his reply memorandum ("Reply").  Pfoff subsequently filed his Reply, dated March 10, 2020 [Doc. No. 69], followed by a Notice of Appeal to the Eighth Circuit Court of Appeals [Doc. No. 70], *Pfoff v. United States*, No. 20-1615, as well as a Request for a Certificate of Appealability, pending with this Court.

Because the Court had directed entry of judgment prior to receiving Pfoff's Reply, and because the Eighth Circuit had jurisdiction over this matter in light of Pfoff's appeal, the Court sought that court's permission in order to reconsider its prior ruling with respect to arguments raised in Pfoff's Reply. (*See* Fed. R. Civ. P. 60(a) Request [Doc. No. 74].) On April 1, 2020, the Eighth Circuit granted that request, remanding the matter to this Court, for the limited purpose of taking such action.  (*See* 8th Cir. April 1, 2020 Remand Order [Doc. No. 75].)

The Court then vacated its February 26, 2020 Order and the February 27, 2020 Judgment, so that it could consider Pfoff's Reply.  (Apr. 3, 2020 Order [Doc. No.  ].)  The Court further directed the Government to file a supplemental response, addressing the arguments in Pfoff's Reply, along with a supplemental affidavit from Defendant's former counsel, Mr. Rivers, responding to the particular claims of ineffective assistance of counsel raised in Pfoff's Reply.  (*Id.* at 2.)  Finally, the Court permitted Defendant to file a sur-reply.  (*Id.*)  The parties have now submitted the supplemental materials.

Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies Pfoff's § 2255 Motion and his Request for a Certificate of Appealability.

## II.     BACKGROUND

In April 2018, the Government charged Pfoff with one count of production of child pornography, and attempted production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251(e).[2]  (Indictment [Doc. No. 12] at 2–8.)  The Indictment alleged that Pfoff, who was working as a personal care attendant for Minor A, a vulnerable minor male, began secretly video recording Minor A when he was nude, between approximately May 2017 and February 2018.  (*Id.* at 1.)  The Government contended that Pfoff used a Motorola cellular telephone and a Dell laptop to produce these visual materials.  (*Id.* at 6.)  In addition, the Indictment alleged that during this time, Pfoff was using peer-to-peer software to download child pornography from the internet.  (*Id.* at 1.)

On May 22, 2018, Pfoff entered a guilty plea in this Court pursuant to a plea agreement (the "Plea Agreement") [Doc. No. 24].  At the plea hearing, Pfoff admitted to the criminal conduct.  (Plea Hr'g Tr. [Doc. No. 57] at 29.)  He stated that he understood the charge, had discussed it with his attorney, Bruce Rivers, and had read the Indictment and Plea Agreement, which he also had discussed with Mr. Rivers.  (*Id.* at 5, 10, 13, 27.)  The Court and prosecutor discussed the elements and facts of the crime with Defendant, who admitted that he had produced and attempted to produce child pornography depicting Minor A, using his Motorola cell phone and Dell laptop to produce and store the videos.  (*Id.* at 23, 26–27.)

On December 21, 2018, finding criminal history category I applicable, the Court

---

[2] On March 5, 2018, the Government initially charged Pfoff through a criminal Complaint [Doc. No. 1].  It filed an Amended Complaint [Doc. No. 6] on March 7, 2018, attaching the affidavit of FBI Task Force Officer Dale Hanson.  The Hanson Affidavit provided additional details regarding the investigation.

sentenced Pfoff to a term of 360 months in prison. (*See* Dec. 21, 2018 Minute Entry [Doc.

No. 43]; Sentencing J. [Doc. No. 44].)

Pfoff did not file a direct appeal. On November 12, 2019, he timely filed the instant

pro se motion to vacate under 28 U.S.C. § 2255.

## III.   DISCUSSION

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral attack, may move
> the court which imposed the sentence to vacate, set aside or correct the sentence.

> While § 2255 generally affords relief, it is only available in limited circumstances.

The Eighth Circuit has held that:

> "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights
> and for a narrow range of injuries that could not have been raised on direct appeal and,
> if uncorrected, would result in a complete miscarriage of justice." . . . [A petitioner]
> may not raise a constitutional issue in the first instance on collateral review "without
> establishing both cause for the procedural default and actual prejudice resulting from
> the error."

*Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United*

*States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). The petitioner bears the burden of proof

as to each ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019)

(citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

In his § 2255 motion, Pfoff asserts the following claims: (1) the Government failed to

show an interstate commerce nexus, as required by the applicable statute of conviction; (2)

the evidence failed to establish that a crime had been committed, as set forth in the applicable

statute; (3) the lack of a valid indictment; and (4) ineffective assistance of counsel.  (*See* Pet. at 4–10 & Attachments A–D.)

## A.  Meeting the Requirements of the Statute

Pfoff asserts two bases for relief that he describes as jurisdictional:  (1) the charged conduct had no effect on interstate commerce; and (2) no crime had been committed, as "there was no sexually explicit conduct in the videos."  (*Id.* at 4–5.)

The applicable statute, 18 U.S.C. § 2251(a) provides, in relevant part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Pfoff asserts that he purchased the Motorola cell phone within Minnesota, and all interstate commercial acts involving the phone occurred before his purchase.  (Pet., Attachment A; Reply at 2.)  Thus, he argues, the Government was required to prove that his cell phone moved in interstate commerce *after* he acquired it.  (Pet., Attachment A; Reply at 2.)

While Pfoff cites a 1937 Supreme Court opinion in support of his position, *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37 (1937), that case addresses the scope of the National Labor Relations Act, and merely observes that legislative power should not extend to "indirect and remote" effects on interstate commerce.  (Reply at 2.)  In *Jones & Laughlin Steel*, the Supreme Court upheld the statute against a Commerce Clause

challenge, finding it did not impermissibly extend to indirect and remote effects on interstate commerce. *Id.* at 31–46. As to the specific question here, the Eighth Circuit has found that as long as the materials used to produce child pornography moved in interstate commerce prior to the commission of the offense, the statutory nexus is established. *See United States v. Wallace*, 713 F.3d 422, 429 (8th Cir. 2013) (finding government met its burden to establish the interstate commerce element by showing that videotape depicting child pornography had been assembled in China, then shipped to Los Angeles, before arriving in Arkansas); *United States v. McCloud*, 590 F.3d 560, 569 (8th Cir. 2009) (finding government sufficiently established that memory card containing pornographic images of a minor had crossed state lines, as it was manufactured in Taiwan, then shipped to the United States, prior to its use by the defendant.); *United States v. Bausch*, 140 F.3d 739, 740–41 (8th Cir. 1998) (affirming constitutionality of statute in case where defendant took photographs using a Japanese camera that had been previously transported in interstate or foreign commerce).

At Pfoff's hearing on his change of plea, he expressly acknowledged that the cell phone and the computer he used to produce child pornography were manufactured outside of Minnesota. (Plea Hr'g Tr. at 23, 26–27.) Because these items were manufactured outside the state, they moved in interstate commerce prior to the offense. Accordingly, the Court finds this element was satisfied and this basis of relief is denied.

Pfoff's other purportedly jurisdictional argument—that the video recordings of a minor fail to depict sexually explicit conduct—also fails. As a procedural matter, this argument could have been raised on direct appeal, and Pfoff has failed to show cause or

prejudice as to why he did not do so.  *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998) (citations omitted) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'")  In his Reply, Pfoff assigns blame to his former counsel for the failure to raise the issue on direct appeal.  (Reply at 2.)  Independent of the issue of procedural default, however, this ground of relief fails on the merits.

Under the law, "sexually explicit conduct" includes masturbation and the lascivious exhibition of the anus, genitals, or pubic area of any person.  18 U.S.C. § 2256(2)(A).  A sexualized display of adult genitals near a minor can also constitute child pornography. *See United States v. Lohse*, 797 F.3d 515, 520–22 (8th Cir. 2015).

In his Reply, Pfoff argues that certain images in this case fail to depict the "lascivious exhibition of genitals," as defined by the factors articulated in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).  (Reply at 2.)  The Eighth Circuit has approved the application of the *Dost* factors[3], *see United States v. Johnson*, 639 F.3d 433, 439–40 (8th Cir. 2011), but has observed that the factors constitute a "nonexclusive list" to be considered in determining "whether certain conduct is sexually explicit."  *United*

---

[3]      The *Dost* factors include:  (1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended to elicit a sexual response in the viewer.  636 F. Supp. at 832.

*States v. Lohse*, 797 F. 3d 515, 520–21 (8th Cir. 2015). Because the inquiry is "always case specific, . . . even if a majority of the *Dost* factors are absent, an image may still qualify as a lascivious exhibition of genitals." *Id.* (citing *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009)).

The images in question depict Minor A with an erection while Pfoff measures his genitals; Pfoff and Minor A discussing how to put on a condom while Minor A has an erection; and Pfoff masturbating, followed by Minor A entering a room in a towel. (Plea Agmt. ¶ 2(f).) Unquestionably, these videos meet several of the non-exclusive Dost factors, and depict the "lascivious exhibition of the genitals" of the victim and Pfoff. Accordingly, this ground of relief fails.

## B. Validity of Indictment

### 1. Signed Indictment

As noted, Pfoff also argues that there is no valid indictment because there is "no signature from an attorney for the government nor the foreperson of the Grand Jury" on the document. (Pet., Attachment C; Reply at 3–4.) Pfoff points to Fed. R. Crim. P. 7(c)(1), which discusses the nature and contents of an indictment and requires that it be signed by a government attorney. (Reply at 3–4.)

Again, this is an argument that could have been asserted on direct appeal, and is procedurally defaulted for Pfoff's failure to raise it or to explain why he failed to do so. *Bousley*, 523 U.S. at 622–23. In his Reply, Pfoff again claims that he failed to raise this issue on direct appeal due to the ineffective assistance of counsel. (Reply at 3.) But even absent procedural default, this argument fails on the merits.

8

The Government correctly observes that the practice in this District is for a redacted indictment, without any signatures, to be published on the electronic docket. (Gov't's Opp'n [Doc. No. 65] at 11.) The original Indictment was, in fact, signed by counsel for the Government and the grand jury foreperson. (*Id.* at n.3.) Accordingly, because the Indictment was properly signed, this ground of relief is unavailing.

### 2. Notification of Charges

In his Reply, Pfoff also asserts that the Indictment violates Fed. R. Crim. P. 7(c)(1) by failing to properly notify him that he was charged with both the production of child pornography and the *attempted* production of child pornography. (Reply at 3.) Rule 7(c)(1) requires an indictment to contain a plain written statement of the essential facts constituting the offense charged. Pfoff notes that the Indictment's caption for Count 1 only refers to the production of child pornography, and he was unaware that he was also charged with attempted production until the Government referred to it in its original opposition memorandum. (*Id.* at 3–4.)

While the parenthetical caption below Count 1 in the Indictment refers to the "production of child pornography," Count 1 alleges conduct in violation of "Title 18, United States Code, Sections 2251(a) and 2251(e)." (Indictment at 6.) As noted earlier, § 2251(a) criminalizes a variety of conduct involved in the production of child pornography. 18 U.S.C. § 2251(a). Section § 2251(e) provides that [a]ny individual who violates, *or attempts* or conspires *to violate, this section* shall be fined under this title and imprisoned not less than 15 years nor more than 30 years." 18 U.S.C. § 2251(e) (emphasis added). The Court finds that the Indictment charges Pfoff with both the production and the

attempted production of child pornography, and finds no violation of Fed. R. Crim. P. 7(c).

Moreover, the Plea Agreement also includes Pfoff's agreement to plead guilty to Count 1 of the Indictment, which alleges the violation of 18 U.S.C. §§ 2251(a) & (e). (Plea Agmt. ¶ 1.) At the hearing on Pfoff's change of plea, the Court described the charge in the Indictment, and stated, "For you to be convicted of that charge, the Government would have to prove beyond a reasonable doubt that . . . you did employ and use, *and attempted to employ and use*, a known minor male to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct[.]" (Plea Hr'g Tr. at 10) (emphasis added). Pfoff stated that he understood that that was the charge against him in Count 1. (*Id.* at 11.) Likewise, in response to questions from counsel for the Government, Pfoff agreed that he "used, employed, and *attempted to use and employ*" a minor male for the purpose of producing visual depictions of sexually explicit conduct. (*Id.* at 26) (emphasis added). He further agreed that when he was making recordings of the minor male, he was "*attempting to capture*" images of the minor male's genitals. (*Id.* at 27) (emphasis added).

For all of the foregoing reasons, this ground of relief also fails.

## C.  Ineffective Assistance of Counsel

Pfoff specifies the following bases in support of his claim of ineffective assistance of counsel: (1) he did not see the Indictment and did not see the Plea Agreement until 10 minutes before the hearing on his change of plea, (Pet. at 7 & Attachment D; Reply at 4); (2) he was "pushed" into a plea at the time, as he lacked access to prescribed "psychotropic medication," and counsel for the Government improperly threatened him with additional charges, (Pet. at Attachment D; Reply at 4–5); and (3) his counsel "fail[ed] to investigate

10

by way of a psychological evaluation." (Pet. at Attachment D; Reply at 5.)

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). This deficient performance must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690.

Meeting the first prong of *Strickland* requires proof that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. A court's review of counsel's performance is highly deferential, and there is a strong presumption of adequate assistance. *Id*. at 690. The second element requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In a case involving a plea agreement, this requires a showing that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Pfoff contends that if he had had effective assistance of counsel, he would not have accepted the plea offer and would have gone to trial. (Pet., Attachment D.)

As an initial matter, Pfoff generally asserts that his counsel was ineffective for

failing to assert the arguments discussed separately above (i.e., whether the interstate commerce requirement was met, whether the depicted acts were sexually explicit, and whether the Indictment was signed). (*Id.*) ("Counsel was ineffective for not bringing to light any of the above mentioned issues[.]")  But for the reasons stated earlier, any such arguments would have been legally and factually futile.  Accordingly, counsel's "failure" to raise these arguments cannot form the basis for an ineffective assistance of counsel claim.  *See Clemons v. Armontrout*, 921 F.2d 187, 191 (8th Cir. 1990) (finding that counsel's failure to raise a meritless argument could not support an ineffective assistance of counsel claim).

As to Pfoff's even more general assertion that his counsel was ineffective for "not arguing or raising any defense and for playing a passive role in criminal proceedings," (Pet., Ground 4), to the extent that it covers other, unspecified conduct, it is entirely conclusory and vague.  It fails to specify the conduct in question and fails to demonstrate how Pfoff was prejudiced.  Moreover, this general assertion is belied by Mr. River's performance, as reflected in the transcripts and supporting affidavits, which demonstrate effective legal representation.  *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (finding no error in denying evidentiary hearing on ineffective assistance claims which were stated in conclusory fashion and were contradicted by counsel's performance, as revealed by the trial transcript.).   Further, at the plea hearing, Pfoff acknowledged that he was satisfied with Mr. Rivers' legal services.  (Plea Hr'g Tr. at 5–6.)  Accordingly, for all of these reasons, the Court rejects these general grounds of relief.

### 1.   Petitioner's Review of Indictment and Plea Agreement

Pfoff's more specific claim that he did not have an opportunity to review the Indictment and Plea Agreement is also contradicted by the record. At the plea hearing, Pfoff stated under oath that he had read and discussed the charges in the Indictment with Mr. Rivers.  (*Id.* at 5, 10, 27.)   Similarly, he stated that he had reviewed and discussed the Plea Agreement with him.  (*Id.* at 13.)

As part of the Government's initial filing in opposition to Pfoff's Petition, it provided an affidavit from Mr. Rivers ("the First Rivers Affidavit").  *See United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009) (noting that a client waives the attorney-client privilege by asserting a claim based on the erroneous advice of counsel).  Mr. Rivers describes several phone calls and meetings with Pfoff, limited to the claims asserted by Pfoff.  (First Rivers Aff. [Doc. No. 65-1] ¶¶ 12–13.)  Specifically, he states that Pfoff reviewed the original Complaint at his detention and arraignment hearing, understood its contents and his rights, and did not dispute any of the allegations, nor express any lack of understanding.  (*Id.*  ¶ 4.)  Mr. Rivers further states that the Indictment was read to Pfoff on April 26, 2018, at which time Rivers and Pfoff met for two hours, from approximately 12:30 p.m. to 2:30 p.m.  (*Id.* ¶ 6.)  At that meeting, they discussed possible defenses.  (*Id.*)  Mr. Rivers also attests that he and Pfoff went over the Government's evidence.  (*Id.*  ¶ 7.)  He states, "Mr. Pfoff was resigned to the fact that surreptitiously recording a[] . . . teen boy putting on a condom . . . and various other surreptitious recordings of the same teen getting undressed were in violation of the law as it was explained to him and he decided to plead guilty as quickly as possible with an explanation."  (*Id.*)

Pfoff disputes that any meeting occurred on April 26, 2018.  (Reply at 4; Req. for Certif. of Appealability at 3.)   In fact, he states that he could not have met with Mr. Rivers on that date, because he was hospitalized at the time, due to injuries from an assault.  (Req. for Certif. of Appealability at 3.)   He contends that medical and police records would support his contention.  (*Id.*)

Along with its supplemental memorandum in opposition, the Government submits two supplemental affidavits from Mr. Rivers ("the Second Rivers Affidavit" and "the Third Rivers Affidavit").[4]  In the Second Rivers Affidavit, Mr. Rivers again states that his records document a discussion with Pfoff on or about April 26, 2018, during which time he explained and reviewed the Indictment.  (Second Rivers Aff. [Doc. No. 77] ⁋ 5.)  He notes that Pfoff also had access to defense counsel via telephone, and all of the issues in the case were either explained to him or communicated to him in person or on the telephone.  (*Id.*) Mr. Rivers further states that on March 9, 2018, he discussed the difference between a complaint and an indictment with Pfoff, who appeared to understand the difference.  (*Id.*)

In the Third Rivers Affidavit [Doc. No. 78], Mr. Rivers states that he contacted the Sherburne County Jail's Office Administrator, Heidi Arbuckle, to inquire if facility records documented his visits with Defendant.  (Third Rivers Aff. ⁋ 2.)  Attached to the Third Rivers Affidavit is an April 13, 2020 email from Ms. Arbuckle to Mr. Rivers, stating that

---

[4]      In Pfoff's Sur-Reply, he stated that although the Government mailed him a copy of its supplemental opposition memorandum, it failed to provide copies of the supplemental affidavits.  (Sur-Reply [Doc. No. 80] at 1.)  The salient points of the supplemental affidavits are accurately described in the Government's supplemental opposition memorandum, and the Court mailed Pfoff a copy of the supplemental affidavits on May 4, 2020.

facility records showed that he visited Pfoff at the Jail on April 26, 2018, at 12:50 p.m., as well as on March 21, 2018, at 4:15 p.m.  (*Id.*, and Attached Email from H. Arbuckle to B. Rivers.)  This comports with Mr. Rivers' earlier recollection of the April 26, 2018 meeting, from approximately 12:30 p.m. to 2:30 p.m.  (First Rivers Aff. ⁋ 6.)

Given that the Government has documented a meeting, supported by three affidavits from former counsel, in which Mr. River discussed the Indictment with Pfoff, and Pfoff provides no evidence in opposition, the Court rejects this basis for his claim of ineffective assistance of counsel.[5]

As to Pfoff's claim that he did not have an opportunity to review the Plea Agreement, Mr. Rivers received it on April 6, 2018.  (First Rivers Aff. ¶ 9.)  After receiving the Plea Agreement, Mr. Rivers "met with Mr. Pfoff shortly thereafter and went over and read the Plea Agreement to him."  (*Id.*)  In addition to Pfoff's own sworn statements at the plea hearing, this evidence overwhelmingly refutes Pfoff's current contention that he was never shown a copy of the Indictment and only saw the "plea deal 10 minutes before court met."  (Pet., Attachment D.)

Thus, with respect to Pfoff's claim that Mr. Rivers did not give him an opportunity to review the Indictment and the Plea Agreement, the Court finds the evidence in the record contradicts Pfoff's claims and fails to meet the two prongs necessary to demonstrate

---

[5]     The Court also notes that counsel for the Government represents that she contacted Major Dave Isais, Sherburne County Jail Administrator, regarding any off-site medical treatment that Pfoff might have received while incarcerated in the jail.  (Gov't's Supp'l Opp'n [Doc. No. 79] at 2.)  Mr. Isais found a record that Pfoff was transported to an off-site medical facility on May 1, 2018, but no other records of off-site treatment.  (*Id.*)

ineffective assistance of counsel.  First, Pfoff has not shown that counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Second, he has not shown a reasonable probability that, but for the errors of counsel, Pfoff would not have pleaded guilty and would have insisted on going to trial.  *York*, 856 F.2d at 63.

### 2.  Pressure to Accept Plea Offer

Pfoff also argues that his counsel was deficient for "push[ing]" him to accept the plea offer without "giv[ing] [him] time to actually weigh the merits of such a deal," despite counsel's knowledge that Pfoff had not received his daily dose of psychotropic medications prior to the plea hearing.  (Pet., Attachment D; Reply at 4–5.)  Pfoff argues that because the subject of the missed medication came up at the plea hearing, "[i]t is therefore impossible to believe Mr. Rivers was never made aware of this as he alleges." (Reply at 4.)

Again, the record refutes Pfoff's claims.  Pfoff does not contend that prior to the hearing, he informed Mr. Rivers that he had missed his medication, impairing his ability to think clearly.  In fact, while under oath, Pfoff informed the Court that despite lacking his medication, he was able to participate in the hearing, was not in any physical pain, could think clearly, and understood the Court's questions.  (Plea Hr'g Tr. at 5.)  Moreover, Pfoff testified that he discussed the charges with Mr. Rivers, told him everything that he wanted him to know, and was satisfied with his services.  (*Id.* at 5–6.)  Furthermore, he affirmed that he had read the Plea Agreement and discussed it with counsel.  (*Id.* at 13.)  Finally, he stated that he entered a guilty plea voluntarily and of his own free will, without force or coercion.  (*Id.* at 29.)

Mr. Rivers' recollection comports with Pfoff's testimony at the plea hearing.  First,

Mr. Rivers attests that he lacked any information that Pfoff was on any medication, let alone that he had sought treatment for a medical condition.  (First Rivers Aff. ¶ 10.)  He contends that at no time did Pfoff inform him that he was denied medication or that he was having trouble understanding the proceedings.  (*Id.*)  To the contrary, Mr. Rivers states that all of his interactions with Pfoff indicated that he was "was fully aware and able to think clearly," (*id.*), and "at no time was [he] under the impression that Mr. Pfoff had any cognitive deficits that would prevent him from understanding the criminal proceedings before him."  (Second Rivers Aff. ⁋ 6.)  Ultimately, Mr. Rivers asserts that in light of the prospect of more charges and the possibility of a higher Guidelines calculation, "the decision to plead was made by Mr. Pfoff and not by me."  (First Rivers Aff. ¶ 11.)

In Pfoff's Reply and Sur-Reply, he further argues that he was unlawfully threatened with additional charges, which led him to accept the plea offer.  (Reply at 5; Sur-Reply at 4.)   In the First Rivers Affidavit, Mr. Rivers states that absent a plea agreement, the Government planned to charge each separate video as a count of production of child pornography. (First Rivers Aff. ⁋ 9.)   In addition, Rivers states that as the case progressed, he received emails from the Government stating that undercover officers had linked Pfoff's computer to two separate child pornography investigations that overlapped.  (*Id.* ⁋ 8.) Further, Rivers attests that on April 11, 2018, he received an email from counsel for the Government, indicating that a second investigation was underway.  (Second Rivers Aff. ⁋ 4.)  He states that it was shortly after he communicated this information to Pfoff that Pfoff decided to plead guilty, as counsel for the Government "was threatening to charge a second case of possession and distribution of child pornography."  (*Id.*)

17

Contrary to Pfoff's argument, the Government's intention to charge additional conduct, or to file a superseding indictment charging separate counts, was not unlawful, and Mr. Rivers was not ineffective for communicating this information, failing to challenge it, or for somehow misleading Pfoff.   Rather, "[t]hese alleged threats are accurate statements of what the prosecutor might have done if [the defendant] had gone to trial." *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) "'While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Id.*  (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)) (internal quotation and citation omitted).

Moreover, Pfoff testified under oath that he entered his guilty plea voluntarily and of his own free will, without force or coercion.   (Plea Hr'g at 29.)   A "'defendant's representations during the plea-taking,'" including those concerning the voluntariness of the plea, "'carry a strong presumption of verity.'"   *Nguyen*, 114 F.3d at 703 (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).  Pfoff has not overcome this strong presumption. Instead, the record demonstrates no ineffective assistance in counsel's performance with respect to the communication of the plea offer and agreement, Pfoff's competence to plead guilty, and the knowing, free, and voluntary nature of his plea. Because this ground of relief is fully contradicted by the record, it is denied.

### 3.   Request for Psychological Evaluation

Petitioner also claims that his counsel was ineffective for "failing to investigate by way of a psychological evaluation." (Pet., Attachment D.)  He contends that he "routinely asked to have a psychological evaluation" and although his counsel "agreed it would be beneficial," he failed to arrange it.  (*Id.*)  Mr. Rivers denies any such conversations, and states, "At no time was a psychological evaluation ever contemplated or promised by me." (First Rivers Aff. ¶ 11.)  In Pfoff's Reply, he asserts that the PSR reflects that Mr. Rivers' mentioned a psychological evaluation to the U.S. Probation and Pretrial Services Officer who prepared the report.  (Reply at 5.)

The PSR contains no reference to a psychological evaluation.  It addresses mental health, but none of these references refer to a psychological evaluation.  (*See* PSR ¶¶ 44, 54–56.)  Mr. Rivers has no specific recollection of discussions during the PSR process about an evaluation, other than the mental health screening that Pfoff completed while at the jail.  (Second Rivers Aff. ¶ 6.)

Importantly, Pfoff does not identify the type of psychological evaluation he claims to have requested, nor its purpose.  Nor does he explain how he was prejudiced in this regard, whether with respect to his decision to plead guilty or with respect to the effect of such an evaluation on the length of his sentence.  In *Ramos v. Weber*, 303 F.3d 934, 937 (8th Cir. 2002), the Eighth Circuit rejected a claim that counsel was ineffective at sentencing for failing to request psychological assessments of the defendant's rehabilitation potential.  The court stated, "Even if the opinions had been requested and offered at sentencing, the trial court was not required to accept the expert's opinions on

rehabilitation." *Id.* To the extent that Pfoff contends that a psychological evaluation might have had an effect on his sentencing, the Court acknowledged Pfoff's terrible childhood history at sentencing, which was also reflected in the PSR, and further acknowledged by counsel for the Government and the victim. However, the Court also noted Pfoff's history of child pornography crimes, his victimization of a vulnerable minor who was entrusted to his care, and his efforts to destroy evidence. (*See* Sentencing Tr. [Doc. No. 58] at 18–20.) A psychological evaluation would not have meaningfully added to the information before the Court when it fashioned Pfoff's sentence.

And to the extent Pfoff contends that a psychological evaluation would have altered his decision to plead guilty and go to trial instead, he fails to provide any factual or legal support for such a position. Accordingly, the Court finds that Pfoff has not shown that counsel's performance in not requesting a psychological evaluation fell below an objective standard of reasonableness, nor that he was prejudiced by counsel's actions. *Strickland*, 466 U.S. at 687. This ground of relief fails.

## D. Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado*, 162 F.3d at 983. Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary. *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the

Court finds that Pfoff fails to meet the requirements identified in *Delgado*, 162 F.3d at 983, and the record here includes all the information necessary for the Court to rule. *Covey*, 377 F.3d at 909. Accordingly, no evidentiary hearing is required in this case.

### E.  Certificate of Appealability

Pfoff also requests a certificate of appealability. Among his arguments, Pfoff states that the Court ruled prematurely on his § 2255 motion, prior to considering rebuttal arguments in his Reply. (Request for Cert. of Appealability at 1–2.) As noted, the Court has since vacated its prior order and entry of judgment, and has considered Pfoff's arguments in his Reply, as well as additional briefing.

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability and his request is denied.

## IV.   CONCLUSION

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1.   Defendant Pfoff's Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 51]
     is **DENIED**;

2.      Defendant Pfoff's Request for a Certificate of Appealability [Doc. No. 71] is

**DENIED**; and

3.      No evidentiary hearing is required in this matter.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 19, 2020

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge